UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antonio Dieargo Patterson, ) | C/A No. 8:11-2834-RMG-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | ***Partial Summary Dismissal*** |
| Bill Byer, New Head Director of SCDC; ) | |
| Warden Wayne McCabbe; Asst. Warden ) | |
| Fred Thompson; Ms. Star Conneley, ) | |
| Medical Supervisor; BJ Thomas, IGC ) | |
| Grievance; Jon Ozmint, Head Director ) | |
| SCDC; Warden Mackie; Officer Doris ) | |
| Gant; and Thomas Moore, Medical ) | |
| Director, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This is a civil action filed by a state prisoner. Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

### *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review *pro se* complaints and petitions for relief and submit findings and recommendations to the District Court. Title 28 U.S.C. § 1915A(a) requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The *in forma pauperis* statute authorizes the District Court to dismiss a case if it is satisfied that the action is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. §1915(e)(2)(B)(i) and (ii). As a *pro se* litigant, Plaintiff's pleadings are accorded liberal

1

construction and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(*per curiam*). However, even under this less stringent standard, a *pro se* pleading remains subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *Weller v. Dept. of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

## BACKGROUND

Plaintiff is currently incarcerated in the MacDougall Correctional Institution, a facility of the South Carolina Department of Corrections ("SCDC") in Ridgeville, South Carolina. Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs, *i.e.* his torn shoulder muscle that he allegedly suffered when he slipped and fell down wet stairs at Kirkland Correctional Institution ("KCI") on September 12, 2010, just a few days after he arrived at KCI. Plaintiff's Complaint is liberally construed as being filed pursuant to 42 U.S.C. § 1983.[1] Plaintiff previously brought a § 1983 claim concerning this same injury, *Patterson v. Kirkland R.E. Correctional In.*, C/A No. 10-2918-RMG-RSC (D.S.C.), in which Plaintiff named only KCI as a defendant. That medical indifference case, filed while Plaintiff was incarcerated in SCDC's Lieber Correctional Institution ("LCI") in

---

[1] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using their badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). Federal actions for damages against state actors pursuant to § 1983 do not impose liability for violations of duties of care (such as those involved in negligence actions) arising under state law. *See Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995); and *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987).

Ridgeville, was dismissed without prejudice (*see* C/A No. 10-2918, ECF No. 25), when Plaintiff failed to bring it into proper form for service of process, after Plaintiff had requested several delays in order to complete the exhaustion of his administrative remedies.[2]

As stated above, in the instant case, Plaintiff generally alleges Defendants were deliberately indifferent to his medical needs, denying Plaintiff prompt medical treatment, recommended therapy, and Plaintiff's grievances.  *See* ECF No. 1, pp. 5–10.  Specifically, Plaintiff makes the following allegations with respect to each Defendant:

> (1) Medical Director [Thomas Moore] fails to respond appropriately or does not respond at all to serious medical need.  On May 16, 2011 respond den[y]ing follow up visit for ther[a]p[]y
>
> (2) Officer Doris Gant prison guard, non medical official intentionally deny or delay access to treatment.
> Interfere with treatment that doctor has ordered.  Feb. 4 to March 4, 2011 Inadequate medical care
>
> (3) Ms. B.J. Thompson[3] Grievance Dept.  Didn[']t tried to help my medical needs.  Unprocesses Grievance 3 times.
> May 18, 2011, June 15, 2011 and June 20, 2011 Medical Indifference
>
> (4) Warden McCabbe knew about medical follow up being denied
> No action took place.  May 21, 2011 (Medical Indifference)
>
> (5) Ms. Star Conneley Medical Supervisor on June 4, 2011 denied me the right to know the name of Medical Director, but stated May 16, 2011 that I was denied medical follow-up

---

[2] The Court takes judicial notice of Plaintiff's prior proceedings in this Court.  *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice is in noticing the content of court records.'").

[3] Elsewhere in his Complaint, Plaintiff identifies this defendant as "B.J. Thomas."  See ECF No. 1, pp. 1, 4.

3

>(6) Warden Mackie was the warden at Kirkland at the time of the accident and was notified of what was going on and had me transfer[r]ed to Lieber no action t[a]ken to solve medical issues.
>
>Thomas Moore Head Director denied medical ther[a]p[]y follow-up.
>
>(7) Asst Thompson Fred (Warden) over medical, and was made aware of pain and suffer from accident
>
>(8) Jon Ozmint Head Director at the time of accident and was notified about accident, and denied ther[a]p[]y.
>
>(9) Bill Byers New Head Director notified of accident Notified of medical denied follow-up ther[a]p[]y
>
>Bill Byers and Jon Ozmint Head Director is legally responsible for overall operation of the Department and each institution under its jurisdiction including Lieber Correctional Inst.
>
>Warden McCabe, Warden Thompson, Warden Mackie, is the Superintendent. He is legally responsible for the operation of the prison and the welfare of all the inmates in that prison.

ECF No. 1, pp. 8–9. Plaintiff also alleges Defendant McCabbe approved an MRI for the first week of December 2010; Defendant Gant told Plaintiff to do his therapy a certain way, which was incorrect; Defendant Conneley told Plaintiff the Medical Director, whom Plaintiff has identified as Defendant Moore, denied Plaintiff the extra therapy recommended by the orthopedic clinic; Defendant Conneley told Plaintiff the band[4] was sent to medical and that it would be a chargeable visit each time Plaintiff needed therapy; and Defendant Moore did not respond when Plaintiff asked why he was denied therapy. *Id.* p. 7.

## DISCUSSION

---

[4] The Court gathers that "the band" was used as part of Plaintiff's therapy. *See* ECF No. 1, p. 7.

The United States Supreme Court has stated that deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In the Fourth Circuit, as a general matter, "only governmental conduct that 'shocks the conscience' is actionable as a violation" of the Eighth or Fourteenth Amendment. *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). A prisoner who alleges deliberate indifference must meet "a very high standard - a showing of mere negligence will not meet it." *Id.* (citing *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).

In the context of prisoner medical care, the United States Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also*, *e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 U.S. Dist. LEXIS 29581, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell*, 528 F.2d at 319. Therefore, to prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with

5

a sufficiently culpable state of mind. *Goodman v. Wexford Health Sources, Inc.*, 425 Fed. Appx. 202, 2011 U.S. App. LEXIS 8703, 2011 WL 1594915, at *1 (4th Cir. 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). A showing that the prison officials were merely negligent, such that the treatment constituted medical malpractice, will not establish deliberate indifference. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Grayson*, 195 F.3d at 695. Moreover, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under § 1983, *Estelle*, 429 U.S. at 106, and disagreements over medical care fail to rise to the level of a constitutional violation, *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).[5] Further, while the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Finally, the Fourth Circuit has

---

[5] For example, in *Lamb v. Maschner*, the court ruled that the proper inquiry for indifference is whether the prison or jail provided any treatment, and that the inmate's agreement or disagreement with the nature and extent of treatment provided is irrelevant:

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

633 F. Supp. 351, 353 (D. Kan. 1986); *see Walker v. Peters*, 863 F. Supp. 671 (N.D. Ill. 1994) (stating that under *Farmer v. Brennan*, "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice").

held that non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990).

However, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). As the *Iqbal* Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." *Id.* at 1949. Indeed, the dissent in *Iqbal* opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." *Id.* at 1957 (Souter, J., dissenting). Even if the majority in *Iqbal* did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to state a plausible claim under such a theory, based on Fourth Circuit precedent. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there

was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (citations omitted).

Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). To be deliberately indifferent, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Moreover, in order to state a cognizable claim under § 1983, a complaint must "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff[]." *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1114 (3d. Cir. 1988).

Here, Plaintiff's Complaint sufficient factual issues with respect to the conduct of Defendants Conneley, Thomas, Gant, Moore, Ozmint, and Mackie to require that the Complaint be served upon them and that they answer or otherwise respond to Plaintiff's allegations. Plaintiff alleges that Conneley, Moore, Thomas, and Gant, personally and directly observed Plaintiff and interacted with him, in their capacities, respectively, as the medical professionals who allegedly delayed and denied him treatment for his serious

medical needs; as the reviewer and denier of Plaintiff's grievances concerning his allegedly constitutionally inadequate medical care; and as the correctional officer who allegedly intentionally delayed or denied Plaintiff's access to treatment between February 4, 2011 and March 4, 2011.  Further, Plaintiff alleges Defendant Ozmint denied Plaintiff therapy and Defendant Mackie transferred Plaintiff to LCI after the accident at KCI.

However, Plaintiff's Complaint is legally insufficient in its attempt to state a cognizable § 1983 claim against Defendants Byer, McCabbe, and Thompson.  First, these Defendants may fairly be described as "supervisory defendants" because of their supervisory roles—SCDC director, warden, and assistant warden—and as outlined above, Plaintiff cannot assert liability as to these Defendants based only on the theory of respondeat superior.  Second, to the extent Plaintiff attempts to allege their personal involvement in the alleged wrongs, Plaintiff fails to make sufficient allegations to state a cognizable claim that they either personally acted to violate Plaintiff's constitutional rights, or that they deliberately failed to act despite having actual knowledge that Plaintiff's constitutional rights were being violated by their subordinates.  The allegations in Plaintiff's Complaint and the documents attached to the Complaint[6] reflect that Defendants Byer, McCabbe, and Thompson took no direct, personal action with respect to Plaintiff's medical needs; Plaintiff merely alleges these Defendants knew about Plaintiff's accident and that "medical" denied Plaintiff additional therapy.  Further, despite the Court's assumption that all of the facts in Plaintiff's Complaint and its attachments are true, Plaintiff has failed to allege Defendants Byer, McCabbe, and Thompson had actual or constructive knowledge

---

[6] *See Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) (stating that a court may consider exhibits to a pleading in assessing its sufficiency).

9

that their subordinates were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Plaintiff. At most, Plaintiff's alleged communications addressed to these "supervisory defendants" merely provided them with notice that Plaintiff claimed SCDC's medical personnel failed to detect the alleged extent of his injury as soon as they should have and failed to provide him with adequate rehabilitation. *See* ECF No. 1-1. Accordingly, Plaintiff's Complaint makes no specific factual allegations that Defendants Byer, McCabbe, and Thompson personally caused Plaintiff serious harm or had actual or constructive knowledge that their subordinates were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Plaintiff, and therefore, the Complaint should be dismissed as to Defendants Byer, McCabbe, and Thompson.

## RECOMMENDATION

It is recommended that the Complaint be partially dismissed as to Defendants Byer, McCabbe, and Thompson, without prejudice and without issuance and service of process. *See Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Briscoe*, 998 F.2d 201 (4th Cir. 1993); *Todd v. Baskerville*, 712 F.2d 70. (4th Cir. 1983); *see also* 28 U.S.C. § 1915(e)(2)(B). The Complaint should be served on the remaining Defendants, *i.e.* Defendants Conneley, Thomas, Gant, Moore, Ozmint, and Mackie.

Plaintiff's attention is directed to the important notice on the next page.

                                                    s/Jacquelyn D. Austin
                                                    United States Magistrate Judge

December 12, 2011
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Larry W. Propes, Clerk of Court**
> **United States District Court**
> **300 East Washington Street, Room 239**
> **Greenville, South Carolina 29601**

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).