IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Antonio Dieargo Patterson, | Case No. 8:11-cv-02834-RMG-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| New Head Director Bill Byer; Warden Wayne McCabbe; Assistant Warden Fred Thompson; Ms. Star Conneley; B.J. Thomas; Head Director SCDC Jon Ozmint; Warden Mackie; Officer Doris Gant; Medical Director Thomas Moore,[1] | |
| Defendants. | |

This matter is before the Court on cross motions for summary judgment filed by Plaintiff [Docs. 25, 61] and Defendants [Doc. 69]. Plaintiff, proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

---

[1] By Order of the District Court filed February 2, 2012, Plaintiff's Complaint was dismissed as to Defendants New Head Director Bill Byer, Warden Wayne McCabbe, and Assistant Warden Fred Thompson without prejudice and without issuance and service of process. [Doc. 33.] Accordingly, any reference to "Defendants" in this Report and Recommendation is to the remaining defendants.

# BACKGROUND[2]

Plaintiff filed this action on October 13, 2011,[3] asserting claims of "medical neglect and a history of pain and suffering." [Doc. 1 at 3.] Plaintiff's allegations concern treatment of a shoulder injury he sustained on September 12, 2010 while in the custody of the South Carolina Department of Corrections ("SCDC") at the Kirkland Reception and Evaluation Center ("Kirkland").[4] [*Id.* at 5–10.] After the fall, Plaintiff felt a little pain that became worse as the day went on. [*Id.* at 5.] Plaintiff signed up for sick call and made a report to medical about the incident. [*Id.*] He received medication that did not work. [*Id.*]

On September 23, Plaintiff went back to medical, still complaining of pain, and received more medication that did not work. [*Id.* at 6.] He saw a doctor on October 13, 2010 and was sent for x-rays. [*Id.*] On October 25, 2010, Plaintiff was told his x-rays looked fine. [*Id.*] He filed a grievance on October 26, 2010 and then was transferred to Lieber Correctional Institution ("LCI"). [*Id.*]

At LCI, Plaintiff started follow-up treatment. [*Id.*] On November 9, Plaintiff wrote Dr. Babbs[5] about the severity of his pain and received an order to report to medical. [*Id.* at 7.]

---

[2] The following background is based on the allegations contained in Plaintiff's Complaint.

[3] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on October 13, 2011. [Doc. 1-2 (envelope stamped as received by prison mailroom on October 13, 2011).]

[4] On September 12, 2010, as Plaintiff came out of his room to go to lunch, he slipped and fell down the stairs. [Doc. 1 at 5.] Plaintiff explains that an inmate had been mopping the floor and spilled a bucket of water on the second floor of the dorm, which ran down the stairs. [*Id.*] Plaintiff alleges he did not notice the water, and he slipped and fell. [*Id.*] Plaintiff makes no allegations of wrongdoing by Defendants regarding how he sustained his shoulder injury.

[5] Dr. Babbs is not named as a defendant in this action, and Plaintiff has made no allegations of wrongdoing by Dr. Babbs.

Plaintiff saw a nurse on several occasions but did not see a doctor until he wrote a grievance to the warden, and then he was sent to the orthopedic clinic in January 2011. [*Id.*] He was diagnosed with a torn shoulder muscle and was sent to physical therapy. [*Id.*] Plaintiff received therapy in February and March—which was not performed correctly—but he was denied further therapy. [*Id.*] Plaintiff alleges he wrote grievances regarding his denial of therapy that were unprocessed or unanswered. [*Id.*]

Plaintiff filed this action claiming deliberate indifference based on the following actions or inactions by Defendants:

(1) Defendant Medical Director Thomas Moore ("Moore") failed to respond and/or to appropriately respond to Plaintiff's serious medical need and denied Plaintiff medical therapy follow-up;

(2) Defendant Officer Doris Gant ("Gant") intentionally denied or delayed Plaintiff's access to treatment, interfered with treatment ordered by a doctor, and provided inadequate medical care;

(3) Defendant B.J. Thomas ("Thomas") did not try to help Plaintiff's medical needs and "unprocessed" Plaintiff's grievance three times;

(4) Defendant Ms. Star Conneley ("Connelly," as identified by Defendants) denied Plaintiff the right to know the name of the medical director and told Plaintiff he was denied medical follow-up;

(6) Defendant Warden Mackie ("McKie," as identified by Defendants) knew about the accident, had Plaintiff transferred to LCI, failed to take action to solve Plaintiff's medical issues; and

(7) Defendant Head Director SCDC Jon Ozmint ("Ozmint") was notified of Plaintiff's accident and denied therapy.

[*Id.* at 8–9.] Plaintiff brings his claims against each defendant in his or her individual and official capacity. [*Id.* at 9.]

3

## PROCEDURAL HISTORY

As previously stated, Plaintiff filed this action on October 13, 2011. [Doc. 1.] On January 17, 2012, Plaintiff filed a motion for summary judgment. [Doc. 25.] On February 17, 2012, Defendants filed a response in opposition. [Doc. 53.] On April 4, 2012, Plaintiff filed a second motion for summary judgment [Doc. 61], to which Defendants filed a response in opposition on April 10, 2012 [Doc. 67]. On April 23, 2012, Plaintiff filed a reply to Defendants' response to his second motion for summary judgment. [Doc. 76.]

On April 13, 2012, Defendants filed a cross motion for summary judgment. [Doc. 69.] On April 16, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to Defendants' motion. [Doc. 71.] Plaintiff filed a response in opposition on April 23, 2012. [Doc. 75.] On May 1, 2012, Defendants filed an additional affidavit in support of their motion [Doc. 79], and on May 7, 2012, Defendants filed a reply to Plaintiff's response [Doc. 80]. Plaintiff filed objections to the additional affidavit on May 9, 2012 [Doc. 81] and additional attachments to his response in opposition on May 30, 2012 [Doc. 82].

Plaintiff's and Defendants' motions are now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon*

4

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

7

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

# DISCUSSION[6]

**Deliberate Indifference**

Plaintiff contends Defendants were deliberately indifferent to his serious medical needs by denying or delaying access to treatment and interfering with treatment.[7] [Docs. 1, 25, 61.] Defendants contend Plaintiff cannot establish liability for deliberate indifference to his medical needs because Plaintiff's medical records demonstrate he was treated for his medical complaints. [Doc. 69-1 at 6.] The Court agrees with Defendants.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and

---

[6] Although not raised by Defendants, the Court notes Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

[7] Plaintiff also alleges Thomas failed to process some of Plaintiff's grievances and Connelly denied Plaintiff the right to know the medical director's name. [Doc. 1 at 8.] First, there is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983). Therefore, Plaintiff does not have a § 1983 cause of action based on Thomas's failure to process Plaintiff's grievances.
  Second, Plaintiff has failed to articulate how Connelly's failure to share with Plaintiff the name of the medical director violated Plaintiff's constitutional rights. Moreover, Plaintiff has apparently learned the name of the medical director because he named Medical Director Thomas Moore as a defendant in this action. Therefore, to the extent Plaintiff has stated a claim based on Connelly's withholding of the name of the medical director, the Court finds this claim is without merit.

Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in *Wilson*) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only

that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff's alleged injury is a sufficiently serious medical condition,[8] the Court finds Plaintiff cannot establish Defendants acted with a sufficiently culpable state of mind. First, Plaintiff acknowledges in his Complaint that Defendants did not ignore Plaintiff's injury. [*See, e.g.*, Doc. 1 at 5–7 (alleging Plaintiff received some treatment but not all treatment ordered by the doctor); Doc. 1-1 at 3–11 (grievances revealing Plaintiff received treatment but expressing dissatisfaction with treatment received and that he needed additional treatment).] Plaintiff merely complains he was not provided the follow-up treatment he alleges was directed by his physician. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g.*, *Jackson*, 846 F.2d at 817.

---

[8] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

Second, evidence produced by Defendants precludes finding Defendants consciously disregarded a substantial known risk to Plaintiff's health or safety. In an affidavit, Moore states that, upon review of Plaintiff's medical records from Kirkland, LCI, and MacDougall Correctional Institution ("MCI"), it is his opinion, to a reasonable degree of medical certainty, that Plaintiff was treated within the appropriate standard of care for his shoulder injury by himself and other employees of SCDC. [Doc. 69-2 at 1.] Moore averred Plaintiff was provided physical therapy from February 7, 2011 through March 4, 2011, which he completed without difficulty and denying any pain or discomfort during the performance of physical therapy; Plaintiff was told to follow up in four months. [*Id.* at 4.] Plaintiff returned for a follow-up consult on August 23, 2011 and continued therapy from August 29, 2011 until November 4, 2011. [*Id.*] Plaintiff was transferred from LCI to MCI in November 2011. [*Id.* at 5.] Plaintiff had a follow-up visit in the orthopedic clinic in January 2012, and he was advised to continue on his home exercise program and to follow up in four months. [*Id.* at 6.] Moore's affidavit is supported by Plaintiff's medical records, which document each of his medical visits, including numerous physical therapy visits.[9] [Doc. 69-3.] Plaintiff has provided no evidence to contradict Moore's testimony other than his own allegations and conclusory statements. A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327,

---

[9] It appears Plaintiff received an hour of physical therapy multiple times a week from February 7, 2011 through March 4, 2011 and nearly every weekday from August 29, 2011 until November 4, 2011. [Doc. 69-3 at 1–10.]

328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the Court finds Plaintiff cannot establish Defendants were deliberately indifferent to his medical needs.

**Supervisory Liability**

To the extent Plaintiff bases his claims as to Ozmint and McKie on the theory of supervisory liability, his claims are without merit.[10] Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

---

[10] Plaintiff includes the following allegations as to Ozmint and McKie:

> Bill Byers and Jon Ozmint Head Director is legally responsible for overall operation of the Department and each institution under its jurisdiction including Lieber Correctional Inst.
>
> Warden McCabe, Warden Thompson, Warden [McKie], is the superintendent. He is legally responsible for the operation of the prison and the welfare of all the inmates in that prison.

[Doc. 1 at 9.] As previously stated, Defendants New Head Director Bill Byer, Warden Wayne McCabbe, and Assistant Warden Fred Thompson have been dismissed as parties to this action. [Doc. 33.] Liberally construing the Complaint, these allegations appear to state a claim based on supervisory liability of Ozmint and McKie.

13

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[11]

*Id.* (citations omitted).

In this case, Plaintiff has failed to establish a § 1983 claim based on a theory of supervisory liability. First, Plaintiff failed to show Ozmint and McKie had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Ozmint and McKie should have been aware. Second, Plaintiff failed to show Ozmint and McKie acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed above, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the

---

[11] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

treatment he received, Defendants were not deliberately indifferent to his medical needs. Finally, Plaintiff failed to establish a causal link between any inaction on the part of Ozmint and McKie and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Ozmint and McKie's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

**Qualified Immunity**

Defendants argue they are entitled to qualified immunity. [Doc. 69-1 at 10–11.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an

allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, as discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment [Doc. 69] be GRANTED and Plaintiff's motions for summary judgment [Docs. 25 and 61] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 15, 2012
Greenville, South Carolina